## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Jacqueline Pfendler, on behalf of herself and all others similarly situated, | Civil Action No. 2:18-cv-00361-AJS |
| Plaintiff, | |
| v. | |
| PNC Bank, National Association, | |
| Defendant. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN
## <u>OPPOSITION TO THE MOTION TO DISMISS</u>

Edwin J. Kilpela
Kevin Abramowicz
**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Fax: (412) 231-0246
ekilpela@carlsonlynch.com
kabramowicz@carlsonlynch.com

D. Greg Blankinship (*pro hac vice*)
Todd S. Garber (*pro hac vice*)
Bradley F. Silverman (*pro hac vice*)
**FINKELSTEIN, BLANKINSHIP, FREI-PEARSON & GARBER, LLP**
445 Hamilton Ave, Suite 605
White Plains, New York 10601
Telephone:  (914) 298-3281
Fax:  (914) 908-6709
gblankinship@fbfglaw.com
tgarber@fbfglaw.com
bsilverman@fbfglaw.com

*Counsel for Plaintiff*

{00292489 }

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ................................................................................................... 1

FACTS ................................................................................................................. 2

ARGUMENT ......................................................................................................... 4

    I.    THE NOTICE AND CURE PROVISION DOES
        NOT PRECLUDE ANY OF PLAINTIFF'S CLAIMS………………………….5

        A.    Defendant Did Receive Notice Of The Unlawful Property Inspections. ..... 5

        B.    Any Further Efforts To Provide Notice
              And Opportunity To Cure Would Be Futile………………………………..6

        C.    The Notice and Cure Provision
              Does Not Apply To Non-Contract Claims. ................................................. 7

    II.    THE DEED OF TRUST BARS
         UNREASONABLE PROPERTY INSPECTIONS………………………….....8

    III.    PLAINTIFF HAS PLAUSIBLY ALLEGED
         A CLAIM UNDER THE PENNSYLVANIA UTPCPL. ..................................... 11

        A.    There Is A Sufficient Nexus Between
              The Alleged Conduct And Pennsylvania..................................................... 11

        B.    Plaintiff Has Alleged Far More Than A Simple Breach of Contract.. ....... 12

        C.    The Economic Loss Doctrine Is Inapplicable............................................. 13

        D.    The Choice Of Law Provision Does Not Preclude A UTPCPL Claim. ..... 14

    IV.    PLAINTIFF HAS PLAUSIBLY ALLEGED
         A CLAIM UNDER THE NORTH CAROLINA UDTPA. ................................... 14

    V.    PLAINTIFF HAS PLAUSIBLY ALLEGED
         A CLAIM FOR UNJUST ENRICHMENT........................................................ 15

CONCLUSION .................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**

*Aceto v. Zurich Ins. Co.,*
   440 F.2d 1320 (3d Cir. 1971)................................................................................ 14

*Allen v. JPMorgan Chase Bank, N.A.,*
   2016 WL 1029334 (S.D. Miss. Mar. 14, 2016) .......................................................7

*Am. Pipe & Const. Co. v. Utah,*
   414 U.S. 538 (1974)..................................................................................................5

*Becker v. Graber Builders, Inc.,*
   561 S.E.2d 905 (N.C. App. 2002)........................................................................ 14

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)..................................................................................................4

*Beyer v. Countrywide Home Loans Serv. LP,*
   2008 WL 1791506 (W.D. Wash. Apr. 18, 2008)....................................................7

*Charles v. Deutsche Bank Natl. Tr. Co.,*
   2016 WL 950968 (S.D. Fla. Mar. 14, 2016) ..........................................................7

*Contreras v. Nationstar LLC,*
   2017 WL 3438769 (E.D. Cal. Aug. 10, 2017) ........................................................7

*Control Sys., Inc. v. Avesta Techs., Inc.,*
   2000 WL 140986 (W.D.N.C. Sept. 6, 2000)…………..…………..…………………7

*CTS Corp. v. Mills Gap Rd. Associates,*
   2012 WL 6802057 (W.D.N.C. Nov. 15, 2012) .................................................... 10

*Danganan v. Guardian Protec. Services,*
   179 A.3d 9 (Pa. 2018) ........................................................................................... 11

*Ellis v. Louisiana-P. Corp.,*
   699 F.3d 778 (4th Cir. 2012) ................................................................................ 14

*Gerber v. First Horizon Home Loans Corp.,*
   2006 WL 581082 (W.D. Wash. Mar. 8, 2006) .......................................................7

*Great Am. Ins. Co. v. Norwin Sch. Dist.,*
   544 F.3d 229 (3d Cir. 2008)................................................................................. 10

*Higley v. Flagstar Bank, FSB,*
   910 F. Supp. 2d 1249 (D. Or. 2012) ...................................................................7

*Hill v. Nationstar Mortg. LLC,*
   2015 WL 4478061 (S.D. Fla. July 2, 2015) .........................................................7

*Huyer v. Wells Fargo & Co.,*
   295 F.R.D. 332 (S.D. Iowa 2013) .....................................................................13

*In re Flonase Antitrust Litig.,*
   692 F. Supp. 2d 524 (E.D. Pa. 2010) .................................................................12

*In re Stewart,*
   391 B.R. 327 (Bankr. E.D. La. 2008) .................................................................10

*Info. Control Sys., Inc. v. Avesta Techs., Inc.,*
   2000 WL 1409862 (W.D.N.C. Sept. 6, 2000) .....................................................6

*Johnson v. Countrywide Home Loans, Inc.,*
   2010 WL 5138392 (E.D. Va. Dec. 10, 2010) ......................................................7

*Kanter v. Barella,*
   489 F.3d 170 (3d Cir. 2007) ................................................................................4

*Kantor v. Hiko Energy, LLC,*
   100 F. Supp. 3d 421 (E.D. Pa. 2015) ...........................................................13, 14

*Kelly v. Georgia-P. LLC,*
   671 F. Supp. 2d 785 (E.D.N.C. 2009) ...............................................................14

*Knight v. Springfield Hyundai,*
   81 A.3d 940 (Pa. Super. 2013) ..........................................................................13

*Levine v. Employers Ins. Co. of Wausau,*
   887 F.3d 623 (4th Cir. 2018) .............................................................................10

*Makadia v. Contl. Waste Mgt., LLC,*
   2016 WL 6601440 (E.D.N.C. Nov. 7, 2016) .....................................................14

*Martin v. Bimbo Foods Bakeries Dist., LLC,*
   2015 WL 1884994 (E.D.N.C. Apr. 24, 2015) ...................................................14

*Martinez v. Natl. Union Fire Ins. Co.,*
   911 F. Supp. 2d 331 (E.D.N.C. 2012) ...............................................................14

*Mendez v. Bank of Am. Home Loans Servicing, LP,*
   840 F. Supp. 2d 639 (E.D.N.Y. 2012) ...............................................................11

*Michael v. CitiMortgage, Inc.,*
2017 WL 1208487 (N.D. Ill. Apr. 3, 2017) ............................................................... 7

*Miller v. Wells Fargo Bank, N.A.,*
994 F. Supp. 2d 542 (S.D.N.Y. 2014) ...................................................................... 6

*Mirfasihi v. Fleet Mortg. Corp.,*
450 F.3d 745 (7th Cir. 2006) ................................................................................ 12

*Panthera Rail Car LLC v. Kasgro Rail Corp.,*
985 F. Supp. 2d 677 (W.D. Pa. 2013) .................................................................. 11

*Patrick v. Teays Valley Trustees, LLC,*
2012 WL 5993163 (N.D. W.Va. Nov. 30, 2012) ...................................................... 7

*Rezapour v. Earthlog Eq. Group, Inc.,*
2013 WL 3326026 (W.D.N.C. July 1, 2013) .......................................................... 14

*Roberts v. NVR, Inc.,*
2015 WL 3745178 (W.D. Pa. June 15, 2015) ........................................................ 13

*Sandoval v. Wolfe,*
2017 WL 244111 (S.D. Fla. Jan. 19, 2017) ............................................................ 7

*Sarsfield v. Citimortgage, Inc.,*
707 F. Supp. 2d 546 (M.D. Pa. 2010) .................................................................. 14

*Schmidt v. Wells Fargo Home Mortg.,*
2011 WL 1597658 (E.D. Va. Apr. 26, 2011) ........................................................... 7

*Sosso v. ESB Bank,*
2016 WL 3855031 (W.D. Pa. July 15, 2016) ......................................................... 13

*Sotomayor v. Deutsche Bank Natl. Tr. Co.,*
2016 WL 3163074 (S.D. Fla. Feb. 5, 2016) ............................................................ 7

*Stitt v. Citibank,*
2015 WL 9177662 (N.D. Cal. Dec. 17, 2015) ........................................................ 11

*Stitt v. Citibank, N.A.,*
942 F. Supp. 2d 944 (N.D. Cal. 2013) ................................................................. 11

*Sullivan v. DB Invest., Inc.,*
667 F.3d 273 (3d Cir. 2011) ................................................................................. 12

{00292489 }

*Vega v. Ocwen Fin. Corp.,*
   2015 WL 1383241 (C.D. Cal. Mar. 24, 2015) .......................................................... 10

*Walker v. Countrywide Home Loans, Inc.,*
   121 Cal. Rptr. 2d 79 (Cal. App. 2d Dist. 2002) ....................................................... 10

*Werwinski v. Ford Motor Co.,*
   286 F.3d 661 (3d Cir. 2002) .................................................................................... 13

*Wilson v. Bank of Am., N.A.,*
   48 F. Supp. 3d 787 (E.D. Pa. 2014) ......................................................................... 11

*Young v. Wells Fargo & Co.,*
   671 F. Supp. 2d 1006 (S.D. Iowa 2009) ............................................................. 12, 13

## **Rules**

Fed. R. Civ. P. 8(d)(3) ..................................................................................................... 15

Fed. R. Civ. P. 23 ............................................................................................................ 12

## INTRODUCTION

Plaintiff Jacqueline Pfendler ("Plaintiff") respectfully submits this memorandum of law in opposition to the motion of defendant PNC Bank, N.A. ("Defendant") to dismiss her complaint.

Defendant engaged in a systematic deceptive scheme to charge mortgagors with improper and unlawful fees for so-called "property inspections."  Defendant's mortgage agreements (including the deed of trust executed by Plaintiff) permit the assessment of such post-default fees only if they are "reasonable or appropriate."  However, through a sophisticated automated computer system, Defendant knowingly set out to charge inherently unreasonable fees on a massive nationwide scale for property inspections that serve no purpose.  Defendant did so in bad faith, solely for the purpose of profiting at the expense of its most vulnerable customers.

This is not a class action for a simple breach of contract.  To the contrary, Defendant engaged in deceptive and unlawful conduct to charge fees for drive-by inspections that provide no actual benefit to Defendant and do not serve the purpose of securing Defendant's interest in the property.  Courts in other jurisdictions have repeatedly found that this precise type of scheme by mortgage lenders is not merely a breach of contract, but a separately actionable deceptive and unfair business practice.  Accordingly, Defendant's conduct also constitutes a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA").

The notice and cure provisions in Plaintiff's deed of trust do not bar Plaintiff's claims.  In accordance with Sections 15 and 20 of the deed of trust, Defendant received notice of Plaintiff's claims through a prior class action complaint alleging identical allegations on behalf of a class that included Plaintiff.  Moreover, further notice would have been futile.  Nor can the notice and cure provision bar Plaintiff's non-contract claims, which arise out of independent statutory duties.

**FACTS**

Defendant is a mortgage lender and servicer with a principal place of business in Pittsburgh, Pennsylvania. Complaint ¶¶ 1, 13. The unlawful and deceptive policies and procedures described herein were devised and implemented from that principal place of business in Pennsylvania. *Id.* ¶ 82. Solely for the purpose of maximizing profits, Defendant charges various fees to borrowers who have fallen behind on their mortgage payments. *Id.* ¶ 1. Such fees include property inspection fees, which are automatically charged to such distressed borrowers. *Id.* Form mortgage agreements utilized by Defendant only permit Defendant to charge post-default fees that are "reasonable or appropriate." *Id.* ¶¶ 7, 38. However, the property inspection fees are inherently unreasonable and inappropriate.

After a default, a drive-by property inspection is ordered by Defendant and charged to the borrower. *Id.* ¶ 2. However, such property inspections serve no purpose other than to increase borrowers' debt. *Id.* ¶¶ 3-6. The sole legitimate reason for a property inspection is to determine if a property is abandoned. *Id.* ¶ 3. Yet, Defendant performs property inspections even where it knows, or has information indicating, that the property is not abandoned. *Id.* ¶¶ 3-5, 17. When a property inspection is performed under such circumstances, it is not reasonable or appropriate. Such information indicating that a property has not been abandoned includes communications with borrowers, receipt of recent payments, efforts by borrowers to resolve delinquencies, and participation by borrowers in loss mitigation processes. *Id.* ¶¶ 5, 17.

In fact, property inspections are ordered through a sophisticated computer system that eliminates human involvement in the process. *Id.* ¶¶ 2, 14. That computer system reviews Defendant's mortgage accounts, searching for properties at which inspections should be conducted. *Id.* The computer system then automatically sends lists of properties to outside vendors that perform the property inspections. *Id.* However, the only factor the computer system

uses to choose properties is whether an account has been delinquent for a specific minimum period of time. *Id.* ¶¶ 14-17. The computer system does not consider any other factors or information available to Defendant. *Id.* Ultimately, this automated system chooses properties *without regard for whether an inspection is reasonable or appropriate.* *Id.* ¶¶ 4, 15, 19. This automated computer system will then continue to order inspections of the same properties -- often on a monthly basis -- until the borrower becomes current on the loan. *Id.* ¶¶ 14, 18. Moreover, property inspectors electronically send their inspection reports directly to the computer system and, thereafter, those reports are generally not seen by human eyes.

These fees are included in borrowers' monthly statements. *Id.* ¶ 20. However, when a reasonable consumer sees such charges, that consumer would have no reason to believe that the fee was for an unreasonable or inappropriate service, or a service that was performed without regard for whether it was reasonable or appropriate. *Id.* Defendant knowingly sent out these statements as part of its deceptive and unfair scheme to increase its profits. *Id.* ¶¶ 21-25.

Defendant also assessed property inspection fees to borrowers before paying the vendors that perform the inspections, thereby generating additional profits through "float" income. *Id.* ¶ 24. Additionally, when borrowers pay property inspection fees, they are paying money that otherwise would be applied to loan principal or interest, thus causing additional interest to accrue and compound on amounts that otherwise would have been paid down. *Id.* ¶ 25.

On December 9, 2011, Plaintiff purchased a home in Littleton, North Carolina and executed a deed of trust ("Deed of Trust") mortgaging the property. *Id.* ¶ 31. That Deed of Trust provides that, in the event of a default by Plaintiff, "Lender may do and pay for whatever is *reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument*, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property." *Id.* ¶ 38 (emphasis added).

After five years of regular payments, in 2017, Plaintiff began facing difficulty making regular mortgage payments every month. *Id.* ¶ 40. She missed a payment in August 2017, but made a payment on September 7, 2017. *Id.* ¶ 41. At the time, Plaintiff was in communication with Defendant and Defendant knew, or should have known, that Plaintiff was attempting to become current on the loan and that the property had not been abandoned. *Id.* ¶¶ 42, 50-51. Indeed, on September 17, 2017, Plaintiff submitted a hardship assistance request, demonstrating an intent to become current on the loan and not to abandon the property. *Id.* ¶ 51.

Nevertheless, on or before October 23, 2017, Defendant ordered a property inspection and Plaintiff was assessed a $15 fee for the inspection. *Id.* ¶ 43. Thereafter, Plaintiff made a payment on November 1, 2017, further indicating an intent to pay her mortgage obligations and not abandon the property. *Id.* ¶ 46. Yet, Defendant ordered another property inspection on or before November 20, 2017 and assessed another $15 inspection fee to Plaintiff. *Id.* ¶ 47. Neither of the property inspections did anything to "protect Lender's interest in the Property and rights under this Security Agreement," and neither was reasonable or appropriate.[1] *Id.* ¶¶ 44, 48.

## ARGUMENT

On a motion to dismiss, the Court must view all of the allegations and facts in the complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). The Court may not dismiss a complaint merely because it appears unlikely or improbable that a plaintiff can prove the facts alleged or will ultimately prevail. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).

---

[1] On November 30, 2017, Plaintiff made a payment that was credited to the first inspection charge. On March 2, 2018, Plaintiff made a payment that was credited to the second charge. *Id.* ¶¶ 52-53.

I.    THE NOTICE AND CURE PROVISION DOES NOT PRECLUDE ANY OF PLAINTIFF'S CLAIMS.

   A.    **Defendant Did Receive Notice Of The Unlawful Property Inspections.**

Defendant did, in fact, receive notice under Sections 15 and 20 of the Deed of Trust. Section 20, which contains the notice and cure provision, provides that notices must be given as set forth in Section 15.  *See* Deed of Trust § 20.  Section 15 provides that: "Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Agreement shall not be deemed to have been given to Lender until actually received by Lender."  Deed of Trust § 15.  This requirement was satisfied.  On October 31, 2017, a substantially similar class action complaint was filed in an action entitled *Marsh v. PNC Bank, N.A.*, Case No. 2:17-cv-01411-AJS (W.D. Pa.).  *See* Declaration of Todd S. Garber ("Garber Decl.") Ex. A.  That complaint made virtually identical allegations regarding how property inspection fees are unlawful and violate the terms of the mortgage agreements of all class members.  It was specifically brought on behalf of a nationwide class of PNC mortgagors that were assessed property inspection fees.  Garber Decl. Ex. A ¶ 42.  That class included Plaintiff.  Defendant designated the same counsel that represents it in the present action to accept service of the *Marsh* complaint.  On November 9, 2017, designated counsel signed a waiver of the service of summons (Garber Decl. Ex. B), acknowledging actual receipt of the complaint.[2]  From November 9, 2017, through the commencement of the present action on March 20, 2018, Defendant made no effort to cure the breaches of its contractual obligations.  Defendant received notice and an opportunity to cure.[3]

---

[2] By Order dated December 18, 2017, the *Marsh* action was voluntarily dismissed without prejudice.  *See Marsh* ECF No. 7.

[3] That the notice requirement is satisfied through a prior class action complaint alleging the same claims on behalf of a class that includes Plaintiff is also consistent with the Supreme Court's decision in *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974).  There, the Supreme Court held

**B.    Any Further Efforts To Provide Notice And Opportunity To Cure Would Be Futile.**

Defendant had over four months from receipt of the *Marsh* complaint to cure the alleged breaches of the mortgage agreements of the *Marsh* class members (including Plaintiff). Defendant did nothing and never suggested that it had any inclination to cure the alleged breaches.  It is plausible that Defendant would not act any differently had it received further notice from Plaintiff of the same breaches.  Thus, any additional effort by Plaintiff to provide notice and opportunity to cure would have been futile.  Compliance with a notice and cure provision is not required where such compliance would have been futile.  *See, e.g., Miller v. Wells Fargo Bank, N.A.*, 994 F. Supp. 2d 542, 552, n.6 (S.D.N.Y. 2014) (in action by mortgagor against lender, where lender had actual notice of alleged breach and does nothing, "a party need not provide notice of and an opportunity to cure a breach when doing so would be futile").[4]

---

that, when a class action is filed, in the event a class is ultimately not certified, the statute of limitations for claims of individual class members are tolled from the date of the filing of the complaint.  *Am. Pipe*, 414 U.S. at 554–55.  This is because the defendant has already been placed on notice of the claims of the individual class members through the class action complaint.  *Id*.

> 'The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them.' The policies of ensuring essential fairness to defendants and of barring a plaintiff who 'has slept on his rights,' are satisfied when, as here, a named plaintiff who is found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment. Within the period set by the statute of limitations, the defendants have the essential information necessary to determine both the subject matter and size of the prospective litigation, whether the actual trial is conducted in the form of a class action, as a joint suit, or as a principal suit with additional intervenors.

*Id*. (internal citations omitted).

[4] North Carolina and New York contract principals are the same.  *See Info. Control Sys., Inc. v. Avesta Techs., Inc.*, 2000 WL 1409862, at *3 (W.D.N.C. Sept. 6, 2000) ("the substance of New York and North Carolina contract law is identical").

**C.**   **The Notice and Cure Provision Does Not Apply To Non-Contract Claims.**

Even if the Court determines that sufficient notice was not provided, the notice and cure

provision is inapplicable to the non-contract claims.  "Even if the Plaintiffs were obligated to

provide notice to [the lender] based on the provision at issue, several courts have acknowledged

that identical notice-and-cure provisions do not extend to claims based on deceptive business

practices." *Schmidt v. Wells Fargo Home Mortg.*, 2011 WL 1597658, at *3-4 (E.D. Va. Apr. 26,

2011), *aff'd*, 482 Fed. Appx. 868 (4th Cir. 2012).  In similar actions, courts have repeatedly found

notice and cure provisions inapplicable to claims other than breach of contract.  *See, e.g., Beyer v.*

*Countrywide Home Loans Serv. LP*, 2008 WL 1791506, at *3-4 (W.D. Wash. Apr. 18, 2008),

*aff'd*, 359 Fed. Appx. 701 (9th Cir. 2009) (denying motion to dismiss consumer protection act and

unjust enrichment claims); *Patrick v. Teays Valley Trustees, LLC*, 2012 WL 5993163, at *9 (N.D.

W.Va. Nov. 30, 2012) (notice and cure provision inapplicable to claims of fraud and violations of

federal and state debt collection statutes); *Gerber v. First Horizon Home Loans Corp.*, 2006 WL

581082, at *2-3 (W.D. Wash. Mar. 8, 2006) (denying motion to dismiss state consumer protection

act and unjust enrichment claims).  Because such non-contract claims arise out of duties separate

from those in any contract and "exist[] independently of any contract between the parties, they

were unaffected by the failure to notify and could go forward." *Beyer*, 2008 WL 1791506, at *3.[5]

---

[5] The cases cited by Defendant are readily distinguishable.  *Johnson v. Countrywide Home Loans,*
*Inc.*, 2010 WL 5138392, at *2 (E.D. Va. Dec. 10, 2010) actually acknowledges *Gerber*, but
dismissed the alleged claims, because, unlike *Gerber*, there was no consumer protection act claim.
In *Hill v. Nationstar Mortg. LLC*, 2015 WL 4478061 (S.D. Fla. July 2, 2015), *Charles v.*
*Deutsche Bank Natl. Tr. Co.*, 2016 WL 950968 (S.D. Fla. Mar. 14, 2016), and *Contreras v.*
*Nationstar LLC*, 2017 WL 3438769, at *3 (E.D. Cal. Aug. 10, 2017), the courts simply assumed
all claims arose solely from contracts, but did not address the fact that non-contract claims, such
as those under consumer protection statutes, arise out of duties that exist independent of any
contract. They also do not involve allegations of deceptive account statements. *Michael v.*
*CitiMortgage, Inc.*, 2017 WL 1208487 (N.D. Ill. Apr. 3, 2017) also did not consider whether
plaintiff's claims arose from any source other than the contract.  *Allen v. JPMorgan Chase Bank,*
*N.A.*, 2016 WL 1029334 (S.D. Miss. Mar. 14, 2016) does not specify what claims were alleged

## II.   THE DEED OF TRUST BARS UNREASONABLE PROPERTY INSPECTIONS.

By its terms, the Deed of Trust only permits the assessment of fees for post-default actions (such as property inspections) that are "*reasonable or appropriate* to protect Lender's interest in the Property and rights under this Security Instrument." Deed of Trust § 9 (emphasis added). However, Defendant asserts that the Deed of Trust permits all property inspections because all property inspections are *per se* reasonable. This assertion stems from a convoluted reading of the Deed of Trust that ignores its plain meaning.  Section 9, which is entitled "Protection of Lender's interest in the Property and Rights Under this Security Instrument," provides in relevant part:

> If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over the Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, *then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument*, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorney's fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding.

Deed of Trust § 9 (emphasis added).  There is no dispute that property inspections fall within this broad set of rights given to Defendant.  There is also no dispute that any actions taken by Defendant pursuant to this section must be reasonable or appropriate.  The complaint plausibly alleges that Defendant's property inspection fees are not reasonable or appropriate. Complaint ¶¶ 1-7, 14-30.

---

and only addresses whether an assignee can enforce a notice and cure provision. In *Higley v. Flagstar Bank, FSB*, 910 F. Supp. 2d 1249 (D. Or. 2012), plaintiff sought to enjoin a pending foreclosure proceeding based on an alleged failure to properly record an assignment, which had actually been cured after defendant was placed on notice of the issue. *Sandoval v. Wolfe*, 2017 WL 244111 (S.D. Fla. Jan. 19, 2017), *amended*, 2017 WL 3724584 (S.D. Fla. Mar. 10, 2017) and *Sotomayor v. Deutsche Bank Natl. Tr. Co*., 2016 WL 3163074, at *1 (S.D. Fla. Feb. 5, 2016) did not involve any statutory claims for deceptive or unfair business practices.

Defendant asserts that the "reasonable or appropriate" requirement is inapplicable because Section 9 of the Deed of Trust is trumped by Section 14. Section 14, expressly pertains to fees "in connection with Borrower's default for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument." Deed of Trust § 14. Given the almost identical language as Section 9, Section 14 clearly pertains to those fees permitted under Section 9. It provides that:

> **Loan Charges**. Lender may charge Borrower fees for services performed in connection with Borrower's default for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorney's fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Deed of Trust § 14. Defendant argues that Section 14 is more "specific," and that the absence of the words "reasonable or appropriate" indicates that all fees referenced in Section 14 are deemed "*per se* reasonable." Def. Mem. at 10. But nothing in Section 14 purports to modify any provision of Section 9, and nothing in Section 14 states that any fee is deemed *per se* reasonable. At most, Section 14 is an extension of Section 9 that identifies particular types of fees permitted under Section 9, some of which are also specifically identified in Section 9 (like attorney's fees), and some which are not (like property inspection fees).[6]

Section 14 is also not more specific than Section 9. This fact is illuminated through the inclusion in Section 14 of the language "including, but not limited to." Section 14 is not limited to "attorney's fees, property inspection and valuation fees," but to all conceivable fees "for services performed in connection with Borrower's default for the purpose of protecting Lender's

---

[6] Because Section 9 already covers "*reasonable* attorney's fees" (Deed of Trust § 9 (emphasis added)), using Defendant's false logic, the specific inclusion of "attorney's fees" in Section 14 would render the term "reasonable" in Section 9 a nullity and *any* attorney's fees -- no matter how unreasonable -- would be *per se* reasonable.

interest in the Property and rights under this Security Instrument." *See* Deed of Trust § 14.

As a result of this breadth, it would be illogical to accept Defendant's argument that the "specific" fees listed in Section 14 must be *per se* reasonable because *any* fee charged by Defendant "for services performed in connection with Borrower's default for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument" -- no matter how outrageous -- would be *per se* reasonable. It would also render the "reasonable or appropriate" requirement of Section 9 meaningless.[7] It is well settled that courts cannot interpret a contract provision in a manner that renders another provision meaningless. *See CTS Corp. v. Mills Gap Rd. Associates*, 2012 WL 6802057, at *8 (W.D.N.C. Nov. 15, 2012), *report and recommendation adopted*, 2013 WL 80105 (W.D.N.C. Jan. 7, 2013). Even if Section 14 was more specific, it must be read in harmony with Section 9. *Id.*[8]

Defendant's faulty logic must fall of its own weight. As set forth in another case involving the same type of computerized automated property inspection process:

> Wells Fargo argues that the decision to conduct drive-by inspections every time a loan is twenty (20) days past due is reasonable. . . . Wells Fargo requests blanket authority to charge every debtor or borrower a fee for a drive-by inspection no matter what the circumstances, provided, in Wells Fargo's view, the loan is twenty (20) days past due. While this might seem both logical and practical at first blush, in practice it is much less so. . . . In short, the Court concludes that Wells Fargo's computer system automatically generates these inspections for no discernable purpose or benefit to the lender.

---

[7] Taking Defendant's position to its logical extreme, Defendant could have a property inspection performed every single day (or multiple times a day) on a single property, assessing associated daily fees to the borrower, and such a practice would still be *per se* reasonable.

[8] The cases cited by Defendant are inapposite. *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 247 (3d Cir. 2008) makes clear that general and specific provisions must be read together to avoid ambiguities. *Levine v. Employers Ins. Co. of Wausau*, 887 F.3d 623, 630 (4th Cir. 2018) (applying Virginia law) states that a specific provision only governs where that provision conflicts with a general provision. There is no conflict between Section 9 and Section 14. Moreover, Plaintiff alleges that the property inspections were not performed for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument. Complaint ¶¶ 21-22. Thus, even if there was merit to Defendant's argument, as alleged, the assessment of fees for such inspections would still violate Section 9 and Section 14.

*In re Stewart*, 391 B.R. 327, 342-44 (Bankr. E.D. La. 2008), *aff'd,* 2009 WL 2448054 (E.D. La. Aug. 7, 2009), *vacated in part, appeal dismissed in part,* 647 F.3d 553 (5th Cir. 2011).[9]

**III.   PLAINTIFF HAS PLAUSIBLY ALLEGED A CLAIM UNDER THE PENNSYLVANIA UTPCPL.**

    **A.   There Is A Sufficient Nexus Between The Alleged Conduct And Pennsylvania.**

        Plaintiff alleges that Defendant, a company headquartered in Pennsylvania, devised a nationwide scheme to unlawfully assess fees against mortgagors.  This scheme is overseen from Pennsylvania and profits from the scheme ultimately go to Defendant, which is located in Pennsylvania.  There is a strong connection between Pennsylvania and the alleged wrongdoing.  In *Danganan v. Guardian Protec. Services*, 179 A.3d 9, 16 (Pa. 2018), the Pennsylvania Supreme Court recently held that the UTPCPL applies extraterritorially to plaintiffs and transactions outside the state.  Further, claims under the UTPCPL of similar wrongdoing by banks are sufficient to survive a motion to dismiss.  *See, e.g.,* *Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 809 (E.D. Pa. 2014) (UTPCPL claim sustained where "Plaintiff contends that Defendant engaged in fraudulent or deceptive conduct by churning the Mortgage for fees or charges not

---

[9] Nor do Defendant's cited authorities support its argument.  In *Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241, at *4 (C.D. Cal. Mar. 24, 2015), the court made clear that, on a motion to dismiss, it must "read the mortgage agreement in light most favorable to [plaintiff], [and] the Court will assume that [defendant] can only assess property inspection fees when 'reasonable'" and that "[a] factfinder could also find that [defendant] breached the mortgage agreement by not acting reasonably when ordering inspections automatically."  In *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 657 (E.D.N.Y. 2012), the court found no reasonableness requirement because (unlike the Deed of Trust), "Mendez's contract, unlike the standard form contract . . . , does not contain language which permits fees only for whatever is reasonable or appropriate to protect the note holder's interest in the property and rights under the security instrument."  *Walker v. Countrywide Home Loans, Inc.*, 121 Cal. Rptr. 2d 79, 85 (Cal. App. 2d Dist. 2002) involved a motion for summary judgment, not a motion to dismiss, and the court merely found that property inspections fees, *in general*, did not violate various California statutes.  *Stitt v. Citibank*, 2015 WL 9177662 (N.D. Cal. Dec. 17, 2015), involved a motion for class certification, as opposed to a motion to dismiss.  In fact, that case survived a motion to dismiss.  *See Stitt v. Citibank, N.A.*, 942 F. Supp. 2d 944, 948 (N.D. Cal. 2013).

reasonable or otherwise proper, or by allowing others to do so").

### B. Plaintiff Has Alleged Far More Than A Simple Breach of Contract.

This is not "a breach of contract claim masquerading as a consumer tort action." Def. Mem.
at 13. Plaintiff alleges that Defendant engages in a nationwide automated scheme to profit
through the assessment of unlawful fees that Defendant knows it may not charge and misrepresents
to borrowers that these are legitimate fees. Defendant's argument was rejected in *Young v. Wells
Fargo & Co.*, 671 F. Supp. 2d 1006 (S.D. Iowa 2009), where plaintiffs made substantially similar
allegations regarding unreasonable property inspection fees.[10] There, "[t]he Court [was] not
persuaded by Wells Fargo's attempt to construe Plaintiffs' allegations as a contract dispute"; rather,
"Plaintiffs have alleged that Wells Fargo's practices constitute a systematic scheme to charge
excessive fees and conceal those fees from mortgagors. . . . it is well settled that allegations that a
defendant engaged in deceptive business practices can support a claim for breach of contract or
fraud, even when the defendant's actions are also contrary to the terms of a valid contract." *Young*,
671 F. Supp. 2d at 1033-34. "The Court must conclude for purposes of the Motion to Dismiss that
Wells Fargo knew the contract terms regarding mortgage servicing fees, yet systematically charged
borrowers fees that did not comply with their mortgage contracts." *Id.* at 1038. *See also Huyer v.*

---

[10]   [The *Young*] Plaintiffs have pleaded that Wells Fargo engaged in a systematic course
of conduct to defraud mortgage borrowers. Plaintiffs allege that Wells Fargo has
managed and administered its mortgage servicing through the use of general computer
software packages with little or no human intervention since at least 2001, and that
the scheme was in existence when they obtained their mortgages. Plaintiffs describe
how they believe the excessive fees are calculated within the [computerized] program.
They lay forth the process by which the [computerized] system automatically
generates property inspection requests, sends them to property inspection vendors,
allows the property inspection vendor to upload its report, and charges a property
inspection fee to the mortgagor's mortgage account. They note that after the first
property inspection is triggered by a default, the system will continue to generate
property inspection orders every 20–45 days until the mortgagor cures the default.

*Young*, 671 F. Supp. 2d at 1034 (internal citations omitted).

*Wells Fargo & Co.*, 295 F.R.D. 332 (S.D. Iowa 2013) (granting class certification in same action).

     **C.**      **The Economic Loss Doctrine Is Inapplicable.**

Defendant's argument that Plaintiff's UTPCPL claim is barred under the economic loss

doctrine is premised on *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002), which is

no longer good law.  *Werwinski* merely predicted that the Pennsylvania Supreme Court would

find UTPCPL claims to be subject to the economic loss doctrine.  However, subsequent

Pennsylvania state court decisions have come to the opposite conclusion, finding that the

economic loss doctrine does not apply.  *See Knight v. Springfield Hyundai*, 81 A.3d 940, 952 (Pa.

Super. 2013) ("[T]he economic loss doctrine is inapplicable and does not operate as a bar to

Knight's UTPCPL claims.").  As a result, several courts have held that *Werwinski* is no longer

controlling.  *See, e.g., Sosso v. ESB Bank*, 2016 WL 3855031, at *7 (W.D. Pa. July 15, 2016)

("[T]his Court concludes that it is no longer bound by *Werwinski* and is required to follow the

precedential ruling of the Pennsylvania Superior Court in *Knight* which held that claims brought

under the UTPCPL are not barred by the economic loss doctrine."); *Kantor v. Hiko Energy, LLC*,

100 F. Supp. 3d 421, 424 (E.D. Pa. 2015) ("[B]ecause the Pennsylvania courts have since ruled to

the contrary, *Werwinski* no longer has precedential effect."); *Roberts v. NVR, Inc.*, 2015 WL

3745178, at *4 (W.D. Pa. June 15, 2015) ("[B]ased upon the rulings of the Pennsylvania Supreme

Court, the economic loss doctrine does not apply.").[11]

---

[11] Defendant cites *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 557 (M.D. Pa. 2010),
which preceded *Knight*, but still expressed disagreement with *Werwinski*'s holding.  Other cases
that continue to follow *Werwinski* rely on faulty reasoning.  "A predictive ruling by the Third
Circuit is generally binding on the district court.  However, when the Pennsylvania intermediate
appellate courts have ruled to the contrary and their decisions have not been overruled by the
state's highest court, we are no longer compelled to follow the Third Circuit's prediction. . . . It is
state law, not federal law, we must follow." *Kantor*, 100 F. Supp. 3d at 427 (internal citation
omitted).  *See also Aceto v. Zurich Ins. Co.*, 440 F.2d 1320, 1322 (3d Cir. 1971) ("No one may
properly rely upon what we have held as more than persuasive on a question of Pennsylvania law
so long as the Pennsylvania Supreme Court has not ruled upon that legal question.").

### D. The Choice Of Law Provision Does Not Preclude A UTPCPL Claim.

Defendant also argues that the UTPCPL claim should be dismissed on choice of law grounds. The Deed of Trust provides that: "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." Deed of Trust § 16. Such narrow choice of law provisions only apply to contract claims, and not tort or statutory claims. *See Panthera Rail Car LLC v. Kasgro Rail Corp.*, 985 F. Supp. 2d 677, 694-95 (W.D. Pa. 2013) (provision that "This Lease shall be governed by and construed in accordance with the laws of the State of Minnesota" only applies to contract claims and not tort claims).[12]

### IV. PLAINTIFF HAS PLAUSIBLY ALLEGED A CLAIM UNDER THE NORTH CAROLINA UDTPA.

Under the UDTPA, Plaintiff need only plausibly allege "[e]gregious or aggravating circumstances . . . includ[ing] conduct of the breaching party that is deceptive." *Becker v. Graber Builders, Inc.*, 561 S.E.2d 905, 910–11 (N.C. App. 2002).[13] As set forth above, Plaintiff has alleged a systematic and deceptive scheme to charge unlawful fees.[14] This is sufficient to satisfy

---

[12] Other than pointing to the narrow choice of law provision in the Deed of Trust, Defendant has not conducted any formal choice of law analysis. There is no need to do so at the pleadings stage. Particularly in nationwide class actions, choice of law questions should not be resolved until the class certification stage, or later. *See Sullivan v. DB Invest., Inc.*, 667 F.3d 273, 309 (3d Cir. 2011) ("'[C]hoice-of-law issues in nationwide class actions are rarely so uncomplicated that one can delineate clear winning and losing arguments at an early stage in the litigation'; 'the legal uncertainty resulting from the complicated choice-of-law issues' would unduly complicate the process for establishing predominance under Rule 23. . . . As a result, many courts find it 'inappropriate to decide choice of law issues incident to a motion for class certification.'" (quoting *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 750 (7th Cir. 2006)); *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 534 (E.D. Pa. 2010) (forgoing choice of law analysis on motion to dismiss where "choice-of-law issues may be determined at or after class certification").

[13] The economic loss doctrine is also inapplicable to the UDTPA. *See Martin v. Bimbo Foods Bakeries Dist., LLC*, 2015 WL 1884994, at *7 (E.D.N.C. Apr. 24, 2015).

[14] Defendant makes light of the fact that Plaintiff was "only" charged $30 as a result of this scheme. Def. Mem. at 14. Thirty dollars may not be material to Defendant, but it is to distressed homeowners. The cumulative fees charged to thousands of borrowers quickly accumulate.

Plaintiff's pleading burden.  *See Makadia v. Contl. Waste Mgt., LLC*, 2016 WL 6601440, at *3 (E.D.N.C. Nov. 7, 2016) (contractual relationship does not preclude UDTPA claim where independent intentional torts such as deceptions are alleged); *Martin*, 2015 WL 1884994, at *8 (denying motion to dismiss because the charging of unreasonable expenses "may amount to substantially aggravating circumstances attendant to the alleged breach of contract"); *Rezapour v. Earthlog Eq. Group, Inc.*, 2013 WL 3326026, at *6 (W.D.N.C. July 1, 2013) (coercing payment of additional amounts beyond what is permitted under contract constitutes UDTPA violation).[15]

## V.    PLAINTIFF HAS PLAUSIBLY ALLEGED A CLAIM FOR UNJUST ENRICHMENT

Although Plaintiff alleges a breach of contract, Rule 8(d)(3) permits her to "state as many separate claims or defenses as [she] has, regardless of consistency."  Therefore, Plaintiff may simultaneously allege a claim for unjust enrichment.  Indeed, Plaintiff's claims are not merely based on a breach of contract, but a broad scheme to charge unlawful fees, regardless of the terms of any contract.  As a result of this scheme, Defendant's enrichment is not simply the fees, but other amounts not recoverable as contract damages.  Among other things, the complaint alleges that Defendant additionally profited by assessing property inspection fees to borrowers before paying the vendors that perform the inspections, thereby generating "float" income.  Complaint ¶ 24.  Accordingly, Plaintiff's claim for unjust enrichment should also survive this motion to dismiss.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny this motion.

Dated:  May 9, 2018                          Respectfully submitted,

                                             By:  *s/ Todd S. Garber*

---

[15] Nor are the cases cited by Defendant analogous to the present action.  *Martinez v. Natl. Union Fire Ins. Co.*, 911 F. Supp. 2d 331, 334 (E.D.N.C. 2012) involved a dispute over whether an insurance company properly denied coverage based on the terms of the policy.  *Kelly v. Georgia-P. LLC*, 671 F. Supp. 2d 785, 787 (E.D.N.C. 2009) and *Ellis v. Louisiana-P. Corp.*, 699 F.3d 778 (4th Cir. 2012) both involved a breach of warranty relating to allegedly defective home siding.

Edwin J. Kilpela
Kevin Abramowicz
**CARLSON LYNCH SWEET KILPELA
& CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Fax: (412) 231-0246
ekilpela@carlsonlynch.com
kabramowicz@carlsonlynch.com

D. Greg Blankinship (*pro hac vice*)
Todd S. Garber (*pro hac vice*)
Bradley F. Silverman (*pro hac vice*)
**FINKELSTEIN, BLANKINSHIP,
FREI-PEARSON & GARBER, LLP**
445 Hamilton Ave, Suite 605
White Plains, New York 10601
Telephone:  (914) 298-3281
Fax:  (914) 908-6709
gblankinship@fbfglaw.com
tgarber@fbfglaw.com
bsilverman@fbfglaw.com

*Counsel for Plaintiff and the Classes*

## <u>CERTIFICATE OF SERVICE</u>

I, Todd S. Garber, hereby certify that, on April 9, 2018, this document was filed through the CM/ECF system and will be sent electronically to the registered participants on the Notice of Electronic Filing.

*s/ Todd S. Garber*

Todd S. Garber
